**WATSCO, INC., Plaintiff-Appellee,**

v.

**HENRY VALVE COMPANY, Defendant-Appellant.**

**No. 26, Docket 32160.**

United States Court of Appeals Second Circuit.

Argued Sept. 18, 1968.

Decided Dec. 12, 1968.

See also D.C., 232 F.Supp. 38.

John D. Dewey, Chicago, Ill. (Hanse H. Hamilton, Burgess, Ryan & Hicks, New York City, John L. Alex, Chicago, Ill., of counsel), for appellant.

Samuel J. Stoll, New York City (Stoll & Stoll, Robert S. Stoll, New York City, of counsel), for appellee.

Before LUMBARD, Chief Judge, WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff brought this action in the United States District Court for the Southern District of New York, accusing defendant of infringing United States Patent No. 2,827,913, issued in 1958 to plaintiff's president, William Wagner. The district court found that the patent had been assigned by Wagner to plaintiff, and held that the patent was valid, and that it was infringed. We reverse on the ground that the patent is invalid because "the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (1964); see Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The patent in controversy describes a device for the charging and discharging of a liquid or gas to or from "tubes, pipes, tanks, and other conduits and containers." The device consists basically of two separable units, a valve unit and a tool for actuating it.

The valve unit comprises a small two-piece housing, externally screw-threaded at the top for attachment to the actuating tool or for sealing with a cap, and with two screws connecting its top and bottom portions for clamping around the line to be charged or discharged. A conical tapping needle with an annular shoulder near its pointed end and a slot in its flat end or head is screw-threaded into the housing. Two grooves running transverse to the internal screw-threads of the housing provide a channel, when not sealed, for the flow of liquid or gas from the container being tapped. There is a washer surrounding the pointed end of the tapping needle that forms a seal between the needle and the line [1] and prevents the tapping needle from penetrating the line past the level at which the needle ceases to be conical.

The actuating tool consists of a housing internally screw-threaded at the bottom for connection to the valve unit and externally screw-threaded at the top for the connection of a cap. Through the center of the housing runs a spindle the upper end of which is a handle and the lower end of which is a bit that fits into the slot in the head of the needle in the valve unit. A washer inside the lower end of the actuating tool provides a tight seal with the valve unit when the two sections are screwed together, and a cylindrical washer around the spindle prevents the escape of any liquid or gas through the cap. An externally screw-threaded tubular side piece that serves as conduit to the container from which the liquid or gas to be added to the line is to come, or into which the liquid or gas from the line is to be fed, protrudes from the housing.

To charge or discharge a line the valve unit is first clamped around the line. The actuating tool is then screwed onto the valve unit, the bit of the spindle is fitted into the slot of the tapping needle, and the handle attached to the spindle is rotated until the needle pierces the line. The needle, because it is conical, seals the hole that it is piercing and prevents the leakage of any liquid or gas. When the needle is raised the two seals in the valve unit—from the needle and the washer—are broken and the liquid or gas can run to or from the reservoir, through the actuating tool and the valve unit. When the operation is completed the needle is once again tightened and the

---

1. The patent application, but not the actual device, includes a second washer, at the head of the tapping needle. Its function was to create a seal between the needle and the internal wall of the housing.

seals are thereby restored. The actuating tool is then detached leaving only the small valve unit, which can be capped with a screw-on cap, on the line. The seals remain tight.

Devices for the tapping of lines are by no means a recent development. The references cited in the file of the Wagner patent include a patent from 1897. The binder of exhibits before this court includes a patent from 1874. But the earliest devices were large and cumbersome, and extended radially away from the line a considerable distance. The entire mechanism remained part of the line charged. Vibrations in the line tended to loosen the heavy, protruding valves, and thus created leaks.

Numerous devices for charging and discharging lines have been patented since 1874. While none of them did everything that the Wagner device does, each was an improvement over the then prior art.

We hold that the prior devices have so anticipated Wagner's patent that it is invalid for obviousness.

Plaintiff's patent makes two claims, set forth in the margin, both of which are based on the combination of elements of which the entire device is composed.[2] There are, however, two aspects

2. I claim:

1. A valve organization consisting of a self-tapping and self-sealing valve mounted on a tubular line, comprising a valve housing, clamping means removably clamping said valve housing to said line, a screw-threaded opening formed in said valve housing, a screw-threaded valve needle engaged in said screw-threaded opening, said valve needle having a conical point adapted to punch and pierce said line and thereby to form a conical hole therein, said conical point being adapted to seal said conical hole while forming it, a passage formed between said valve needle and the wall of said screw-threaded opening, a tool engaging head provided on said valve needle, a tool housing removably secured to the valve housing, a tool rotatably supported by said tool housing, the operative end of said tool being disposed within said tool housing and in engagement with the tool engaging head of the valve needle, the opposite end of said tool being disposed outside of said tool housing and being provided with a handle for operating said tool, and a passageway opening into said tool housing and communicating with the first mentioned passage, whereby the tool may be manually operated to turn the valve needle in one direction, to advance it in the direction of said line, to pierce and seal it, and to turn said valve needle in the opposite direction to open such pierced hole for communication with said passage and said passageway, said valve housing having an annular shoulder below the head of the valve needle and a sealing washer being provided between said shoulder and said head of such dimension as to provide a tight seal therebetween and also to limit the depth of penetration of the conical point into the line to the conical portion of the valve needle.

2. A valve organization consisting of a self-tapping and self-sealing valve mounted on a tubular line, comprising a valve housing, clamping means removably clamping said valve housing to said line, a screw-threaded opening formed in said valve housing, a screw-threaded valve needle engaged in said screw-threaded opening, said valve needle having a conical point adapted to punch and pierce said line and thereby to form a conical hole therein, said conical point being adapted to seal said conical hole while forming it, a passage formed between said valve needle and the wall of said screw-threaded opening, a tool engaging head provided on said valve needle, a tool housing removably secured to the valve housing, a tool rotatably supported by said tool housing, the operative end of said tool being disposed within said tool housing and in engagement with the tool engaging head of the valve needle, the opposite end of said tool being disposed outside of said tool housing and being provided with a handle for operating said tool, and a passageway opening into said tool housing and communicating with the first mentioned passage, whereby the tool may be manually operated to turn the valve needle in one direction, to advance it in the direction of said line, to pierce and seal it, and to turn said valve needle in the opposite direction to open such pierced hole for communication with said passage and said passageway, a sealing washer being provided between the valve housing and the tool housing to provide a leak-proof seal between

of the device on which the claim for invention appears ultimately to rest. The first is the separability of the actuating tool from the valve unit. The second is the dual function of the washer at the pointed end of the tapping needle—forming a seal between the needle and the line while at the same time preventing the needle from piercing the line too deeply.

At least two prior patents anticipated the separability of the two parts of plaintiff's device. The Dyer patent, Brit. No. 505,046 (1939), described a valve mechanism for drawing off water from a closed system. While the patent does not specify whether the mechanism is to remain attached to the discharged circuit or is to be removed after the discharge, it does indicate that a handle of some sort must be added to the mechanism to make it operative. The Hunter patent, U.S. No. 2,660,192 (1953), describes a valve for adding water to a line. It punctures a hole in the line and remains attached to the line after the water has been added. As with the Dyer patent, the handle that is used to turn the tapping needle is removable.

In both of the above instances the handle corresponds to the actuating tool of the plaintiff's patent. Obviously the plaintiff's actuating tool is a far more complex mechanism than is the mere handle of the Dyer or Hunter device. But once the idea of separating the two elements had been conceived it could be expected to develop as long as, because of the off-center weight of the device left on the line, vibrations in the line continued to break the seals needed to keep the gas in the line from escaping.

As regards separability, then, we conclude that prior patents anticipated plaintiff's change and that it would have been obvious to a person reasonably skilled in the art.

We think that adding a washer at the pointed end of the tapping needle, to create a seal between the needle and the line, would also have been obvious to a person reasonably skilled in the art. Anyone who has ever fixed a leaking faucet is aware that a washer can create a seal between two surfaces. Washers, sealing rings, or other types of packing have been used in almost all the valves brought to the attention of this court. Some of them were in locations quite similar to the location of the washer here. Even when they were in different locations, however, they were intended to achieve the same broad goal—to create an air-tight system. Indeed, the patented device has sealing washers in several locations. We are not prepared to say that changing the location of or adding a sealing washer is a patentable invention or process.

Nor does the second purpose of the washer, limiting the penetration of the needle, demonstrate sufficient novelty to warrant the issuance of a patent. First, in the actual device penetration is limited not by contact between the annular shoulder near the base of the needle and the washer there, but rather by contact between the annular shoulder just below the head of the needle and the top of the screw threading within the housing in which the needle is fitted. Second, annular shoulders have limited the penetration of piercing needles in other patents. See, e. g., Kochner Spraying Device, U. S. No. 2,596,415 (1952) (contact with sealing gasket); Martin Spray Control Valve, U. S. No. 2,391,582 (1945) (contact with sealing ring); Hunter Saddle Valve, U. S. No. 2,660,192 (1953) (contact with line pierced). While lim-

the two housings, a second sealing washer being provided between the valve housing and the head of the valve needle to provide a leak-proof seal between said valve housing and said needle head, and a third sealing washer being provided on the valve housing for engagement with said line and provid-

ing a leak-proof seal between said valve housing and said line, said second sealing washer between the valve needle head and the valve housing being of such dimension as to limit the depth of penetration of the valve needle into the line to the conical portion of said valve needle.

iting penetration was not essential in the cited patents to create a seal, application of the technique where a seal was necessary would have been obvious to one skilled in the art.

The judgment is reversed.